UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                          Case No. 1:18:CR:70

WILLIAM STANLEY KING,                                HON. GORDON J. QUIST

    Defendant.
_____/

**<u>OPINION REGARDING DEFENDANT'S MOTION TO DISMISS
INDICTMENT FOR SPEEDY TRIAL ACT VIOLATION</u>**

Defendant, William Stanley King, has moved to dismiss the indictment against him for a Speedy Trial Act violation, based on the amount of time that Defendant was incarcerated while being transported for a psychological evaluation. The Government counters that the Speedy Trial Act has not been violated because any delay was reasonable. The Court agrees that the Speedy Trial Act has been violated and will dismiss the indictment, but the dismissal is without prejudice.

**I. Background**

On May 7, 2018, Defendant made his initial appearance in the Western District of Michigan, starting the Speedy Trial clock. On June 14, 2019, after 38 days had elapsed, Defendant filed a motion for an ends-of-justice continuance. On June 19, 2018, Defendant filed a motion for competency evaluation, which the Court granted on June 21, 2018. A competency report was filed on August 14, 2018, and a competency hearing was scheduled for August 21, 2018. On August 16, 2018, the parties filed a joint motion to adjourn the competency hearing until Magistrate Judge Ellen Carmody could return from leave.

On September 12, 2018, the Court granted Defendant's request for a second competency evaluation by the Bureau of Prisons (BOP) and ordered Defendant to self-surrender to the U.S. Marshals Service on September 21, 2018. Defendant did not appear on that day but self-surrendered on October 5, 2018. On October 16, 2018, Magistrate Judge Carmody ordered the U.S. Marshals Service to transport Defendant to SeaTac, a BOP facility in Washington state, with arrival no later than October 26, 2018. Defendant actually arrived at SeaTac 14 days later, on October 30, 2018. Defendant was transported via the JPATS system, which is the government's air transport system that transports defendants who have already been sentenced, defendants travelling for examination purposes, and immigration defendants. The U.S. Marshals Service's manifest reflects that on October 18, 2016, Defendant was transported from Newaygo County Jail by car to Grand Rapids and then to Chicago, where he was entered into the JPATS system. Defendant remained in Chicago until October 29, 2018, when he was flown to Oklahoma City, the hub of the JPATS system through which almost all airlifts pass. The next day, Defendant was flown to Seattle and driven to SeaTac. There is no explanation why Defendant was in Chicago for 11 days.

While Defendant was at SeaTac, the BOP requested and was granted extensions to complete its study and observation of Defendant. On January 24, 2019, Defendant was authorized for transport and was transferred out of SeaTac and went as far as Nevada. Four days later, Defendant left Nevada on a flight to Oklahoma City. Defendant remained in Grady County Jail near Oklahoma City from January 28 to February 26, 2018, during which time no airlifts arrived at Willow Run Airport in Michigan, through which all West Michigan defendants are transported. Defendant was placed on the first available airlift on February 26, 2018, and was returned to

Newaygo County Jail the same day, 33 days after he was available for transport on January 24, 2019.

Defendant was released on bond on March 4, 2019; was ordered competent to stand trial on April 17, 2019; and filed the instant motion on May 6, 2019.

## II. Speedy Trial Act

Under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), in any case where a defendant pleads not guilty, a trial must commence within 70 days of the filing date of the information or indictment or from the defendant's first appearance in the court where the charge is pending, whichever occurs latest. Certain periods of delay are excluded from the computation of the 70 days. Relevant to this case, the Speedy Trial Act excludes delay resulting from a mental competency evaluation, § 3161(h)(1)(A); delay resulting from any pretrial motion, measured from the filing of the motion through the disposition of the motion, § 3161(h)(1)(D); and delay resulting from transportation of the defendant to a place of examination, except that delay in excess of 10 days from the date of the order directing the transportation is presumptively unreasonable, § 3161(h)(1)(F).

## III. Parties' Arguments

The parties agree that 38 days of computable time elapsed between Defendant's initial appearance on May 7, 2018, and the filing of Defendant's motion for an ends-of-justice continuance on June 14, 2018. The parties also agree that 19 days of computable time elapsed between the Court's competency finding on April 19, 2018, and the filing of the instant motion on May 6, 2019. Thus, the parties agree that at least 57 days count toward the Speedy Trial clock.

The parties disagree on what amount of time, if any, should be counted toward the Speedy Trial clock based on Defendant's transportation to and from SeaTac. Defendant argues that four days should be counted for the trip to SeaTac because the transport took 14 days, and any time

3

beyond 10 days is presumptively unreasonable. The Government argues that those four days are not counted because the delay was reasonable.

The return trip began on January 24, 2018, and Defendant arrived on February 26, 2019, a period of 33 days.[1] According to Defendant, 23 days should be counted toward the Speedy Trial clock, the number of days in excess of the 10 days of transport that are presumed reasonable. The Government counters that no days should count on the return trip because the delay could be explained by winter weather delays, staffing issues, and the government shutdown. No airlifts arrived to Willow Run Airport (through which all West Michigan defendants are transported) between January 28, 2019, and February 26, 2019, so Defendant returned to Michigan on the first available airlift.

Based on Defendant's calculation, 84 days should be counted toward the Speedy Trial clock—57 days (agreed upon by the parties) + 4 days (transport to SeaTac) + 23 days (transport from SeaTac). Based on the Government's calculation, only 57 days of computable time have elapsed because no time should be counted for transport to and from SeaTac.

### IV. Analysis

The only dispute between the parties is how many days of Defendant's transport to and from SeaTac count toward the Speedy Trial clock. Looking first at the outbound trip to SeaTac, 14 days elapsed during the period of transport, four of which went beyond the presumptively reasonable 10-day period. The Government could not supply a reason why Defendant spent 11 days in Chicago other than the general observation that JPATS is an overburdened system.

---

[1] The parties stated in their briefing that Defendant arrived in Newaygo County Jail on February 27, 2019, so 34 days had elapsed during the period of transport. However, the evidence offered at the hearing showed that Defendant arrived to Newaygo County Jail on February 26, 2017, so only 33 days had elapsed in transport.

4

Accordingly, the Court finds that the Government has not rebutted the presumption than a delay of more than 10 days is unreasonable, and four days will be added to the Speedy Trial clock.

Turning to the return trip, 33 days elapsed during the period of transport, 23 days past the presumptively reasonable 10-day period.[2] The Government offered multiple explanations for the delay. The Government provided testimony that the federal government was experiencing a shutdown from December 22, 2018, to January 25, 2018, which meant that contract workers could not work, and the U.S. Marshals Service was severely understaffed, creating a backlog. The Government also provided evidence that harsh winter weather affected transport during the period in question: A scheduled JPATS flight from Oklahoma City to Willow Run Airport on January 28, 2019, was cancelled because Grand Rapids and the surrounding areas were under a winter weather advisory. Michigan's Governor, Gretchen Whitmer, declared a state of emergency because of the winter weather beginning January 29, 2019, and ending no later than February 2, 2019. Finally, the Government offered evidence that an airlift scheduled for February 14, 2019, was cancelled because U.S. Marshals Service could not provide agents to collect prisoners from the airlift due to a high profile sentencing that required full staffing in Grand Rapids.

While the Court recognizes that the reasons cited by the Government for the delay in transport can rebut the presumption of unreasonableness, the delay can also not be indefinite. *See United States v. Phinizy*, No. CR 18-0323 (ABJ), 2019 WL 2570038, at *6 (D.D.C. June 21, 2019) (finding that one day could be excluded for weather delay and 21 days could be excluded for a quarantine but the reasons given could not excuse the full 84-day delay). Here, the government

---

[2] There was no order directing Defendant's transport from SeaTac, so "where, as here, no order directing the transportation of a defendant exists, the date upon which the defendant was authorized for transportation by the appropriate prison official controls." *United States v. Garrett*, 45 F.3d 1135, 1140 (7th Cir. 1995). Therefore, the period of transport began on January 24, 2019.

shutdown may have led to understaffing, but the shutdown ended one day after Defendant was authorized for transport, and the Government did not link the understaffing to the days that Defendant spent in Nevada, so no time is excludable on the basis of the government shutdown. The Government showed that weather affected transport from January 28 to February 2, 2019, so the Court will exclude six days for weather-related delays. The Court also finds it reasonable that the Government could not staff the airlift scheduled for February 14, 2019, because the Court ordered the U.S. Marshals Service to remain in Grand Rapids for a high-profile sentencing, so the Court will exclude one day for that delay. Thus, the Court will exclude seven of the 23 days that went beyond the presumptively reasonable 10-day period.

In total, then, 77 days count toward the Speedy Trial clock—57 days (agreed upon by the parties) + 4 days (transport to SeaTac) + 16 days (transport from SeaTac)—resulting in a violation of the Speedy Trial Act. The Court is, therefore, mandated to dismiss the indictment against Defendant.

Next, the Court has to determine if the dismissal is with or without prejudice and must set forth its consideration of the relevant factors in written findings. *United States v. Robinson*, 389 F.3d 582, 587 (6th Cir. 2004).

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). In regard to the seriousness of the offense, the charged offense is making a false statement in a passport application, which is non-violent, does not include drugs or sexual predation, and the anticipated guidelines range is less than a year of incarceration. However, the Government notes that the reasons underlying Defendant's false passport application relate to a

custody dispute involving kidnapping a minor across an international border, and the Government is seeking a conviction so that Defendant will have certain restrictions on obtaining a passport in the future. As to the facts and circumstances that led to dismissal, the Government was transporting Defendant to SeaTac based on *Defendant's* request for a second competency evaluation, and, while the Government could not offer enough evidence to show that the weather delays and security concerns for the Court justified the entire delay, there is no indication that the Government disregarded, mistreated, or ignored Defendant; and Defendant traveled on the first available airlift to Michigan. Finally, regarding the impact of reprosecution on the administration of justice, dismissal with prejudice would offer the perverse incentive for the Government to proceed with travel despite weather-related safety concerns and Court orders to maintain a level of staffing at the Court. Accordingly, the Court will dismiss the indictment without prejudice.

## V. Conclusion

For the foregoing reasons, the Court will **grant** Defendant's Motion to Dismiss Indictment for Speedy Trial Act Violation (ECF No. 71) and will **dismiss** the Indictment (ECF No. 1) **without prejudice**. A separate order will enter.


Dated: July 15, 2019						/s/ Gordon J. Quist
						GORDON J. QUIST
						UNITED STATES DISTRICT JUDGE